[Civ. No. 6551. Second Appellate District, Division Two.—June 22, 1931.]

M. WEINTRAUB, Respondent, v. FRANK SORONOW, Appellant.

W. W. Kaye for Appellant.

Crail, Shutt, Penprase & Crail and Claude A. Shutt for Respondent.

ARCHBALD, J., *pro tem.*—Plaintiff's amended complaint is based on an alleged contract with defendant whereby the former was to have been employed for a period of one year commencing January 18, 1925, as general manager of the latter's furniture manufacturing establishment and to assist in financing said business. The first count alleges the contract to have been for an agreed compensation of $6,000 for services as general manager and $4,000 as a bonus for assistance in financing the business, or a total of $10,000 for the year; that the employment terminated February 8, 1926, and that no part of such compensation, excepting the sum of $2,195, has been paid. The amended complaint further alleges that the assistance in financing was to commence forthwith and that plaintiff was also to begin familiarizing himself with the conduct of the business and to take over active management upon the completion of a house which he was then building for defendant. The second count is for the balance due for the reasonable value of plaintiff's services alleged to be in the sum of $7,805. Defendant's answer denies generally the allegations of the complaint, except it admits that plaintiff was hired as an employee in said business at a salary to be mutually agreed upon, and that thereafter the parties mutually agreed that such salary was to be $50 per week until August 9, 1925, that it was then changed to $250 per month until October 9, 1925, and thereafter $300 per month until February 6, 1926, at which time, it is alleged, plaintiff refused to continue in said employment, a settlement was made and plaintiff fully paid for all services rendered.

As a further defense the answer sets up the statute of frauds. From a judgment in favor of the plaintiff entered on the verdict of a jury in the sum of $6,000 defendant has appealed.

Appellant contends: (a) that the evidence does not justify a recovery under the second count, as it shows that there was an express contract for one year and that plaintiff voluntarily terminated the employment; (b) that the contract is void for uncertainty, both as to the agreement for services to be performed as general manager and the assistance to be rendered in financing; (c) that the bonus agreement is usurious; (d) that the contract is within the terms of section 1624, subdivision 1 of the Civil Code and void; (e) that the evidence shows plaintiff was employed at the pleasure of both parties and upon a fixed salary, which was paid; (f) that the court erred in refusing defendant the privilege of cross-examining plaintiff as to certain checks; (g) in denying defendant's motion for nonsuit and (h) in refusing certain requested instructions.

■ (a), (d) and (e). It is appellant's theory that respondent voluntarily terminated his employment before the year was up and so cannot recover on the second count; that the contract, being made January 18, 1925, to commence in April of that year and continue for one year, is void under the statute of frauds, and that as the services rendered were fully paid for no recovery can be had. There is the same conflict in the evidence as there is in the pleadings as to when the employment began. The plaintiff testified to the following conversation between him and defendant: " 'I tell you, Mr. Soronow, . . . if you will guarantee me $4,000 for assisting financing you, I will draw $6000 [he had already testified that defendant was drawing $6000] and that will give me $10,000 a year, and I will go with you.' He says, 'That suits me fine,' and that was the last we talked about it." Plaintiff had previously testified that the two had had many conversations about the same matter, their last one occurring on a Sunday morning. Asked as to when he first advanced money to assist in the financing, he said: "On the 18th day of January I gave him a check for .$1,000.00. He was short of money." The 18th of January, 1925, was on a Monday, and the witness testified that on said Monday,

following the Sunday conversation, he went down to the plant, and that from then until in April, when he says he took complete charge, he was at the plant "pretty nearly every day. I was getting myself posted as to how he runs the business". Again he says: "I went down there—I remember it was on Monday. He came down after me, and I went down with him immediately after we transacted business; after I told him I would accept his proposition. I was constantly with him, with the exception of the morning I would go down to the building and attend to a little bit there . . . " He also testified that he finished his building operations the latter part of March or the first of April, "but I didn't give my time entirely to the business until I went down either the first part of April or the latter part of March, I am sure".

As to the termination of the employment, it is immaterial who is at fault in so doing, so long as there is evidence from which the jury could infer that the employment began on January 18, 1925, as the termination on February 8, 1926, would carry past the period of one year; although the jury could conclude from the evidence that the breach was due to appellant's action in countermanding some of respondent's orders in arranging the new plant into which they were moving. In this connection Weintraub testified that he "was to take charge of the concern and run it as general manager and credit manager . . . and nobody was to give me any dictation". He said appellant told him, "Mr. Weintraub, you can run the business to suit yourself, and I will assist you in bringing in the orders." Witnesses were also produced by respondent, consisting of salesmen and others who dealt with the Soronow Furniture Manufacturing Company, who testified to the effect that during the year 1925 all their orders for materials and supplies were given by respondent, together with other evidence from which the jury could infer that the latter was acting in the capacity of manager of the business. Of course, there is evidence sharply in conflict with this, but the determination of the credibility of the testimony of the various witnesses was for the jury in the first place, and apparently the jurors have accepted the evidence in favor of respondent. Appellant urges that the testimony of respondent is so full of "glaring incon-

sistencies'' and ''irreconcilable contradictions'' that no reliance can be placed upon it, and that under such circumstances it justifies the conclusion that it is insufficient to uphold the verdict, in which case a question of law arises which may be reviewed by the appellate court, citing in support thereof the case of *Snyder* v. *Miller*, 29 Cal. App. 566 [157 Pac. 22]. We do not find such inherent weakness in the testimony of respondent that a question of law arises, and the so-called irreconcilable and inconsistent testimony is capable to a large degree of reconciliation. But even if it were not, our understanding is that in such a case ''if the evidence is such as that different conclusions upon the matter can rationally be drawn therefrom, then the case presented is one for the jury'' (*Firth* v. *Southern Pac. Co.*, 44 Cal. App. 511, 514 [186 Pac. 815, 816]). In other words, it still presents a conflict in the evidence even though found in the testimony of a single witness, and appellant's arguments here were undoubtedly vigorously made in the first instance to the jury, which decided as to the credibility of the witnesses contrary to his contention, and in the second place to the trial judge, who heard the evidence and saw the witnesses and who likewise decided contrary to such contention. In view of these circumstances we cannot say that the evidence was not such as to afford grounds for an honest difference of opinion between intelligent men as to its effect, which we understand must be the situation before an appellate court can determine that the evidence is insufficient as a matter of law to support the verdict.

So it appears that the evidence supports the allegations of the complaint as to the nature of the employment and that the employment began January 18, 1925, and continued for more than one year, the term which respondent contends was agreed upon. ▮ The contract having been fully performed, and nothing remaining to be done under it but to pay the salary earned, and each cause of action being based upon a contract, one express and the other implied, they would seem to be properly united in one complaint under section 427 of the Code of Civil Procedure. Respondent possibly having some doubt as to his ability to establish to the satisfaction of the jury that there was an agreed consideration of $10,000 as alleged in the first count, properly relied upon a count based on the reasonable

value of the services rendered (*Wilson* v. *Smith,* 61 Cal. 209), and evidently the jury determined the amount due thereunder. As we have seen, there seems to be evidence to support their verdict, so contentions (a), (d) and (e) would appear to be settled thereby, under the evidence.

(b) It is to be observed that this is not an action to enforce performance of the contract alleged, but to recover for services performed under it. As long as the parties performed it, it was made sufficiently clear what was intended to be done under it. We see no merit in this contention.

(c) The allegation in the amended complaint is that "plaintiff agreed to . . . assist in financing said business". The complaint does not show what plaintiff was to do in so assisting, and the evidence shows that he not only advanced money on his own checks, for which no interest was charged, but used his credit at his own bank in securing loans on the Soronow Furniture Manufacturing Company's notes; so the agreement alleged is not usurious on its face, and the evidence shows that what was done by the parties under it consisted not only in advancing plaintiff's own money when needed, but in services rendered in securing money on obligations of the corporation, a very valuable assistance. It appears therefore that the contract alleged and proved was not a contract for the "loan or forbearance of money", and the compensation alleged was not interest in any sense, so we cannot say it was void on that ground, as appellant urges here for the first time—except as said question was raised in instructions requested bearing upon that contention and refused by the trial court, and in which refusal we see no prejudicial error.

(f) Plaintiff offered in evidence some 469 checks as one exhibit. They were apparently not read or shown to the jury, nor was the total amount of money which they represented put in evidence, but they were marked exhibit 26. Counsel for defendant question some of them, and in order to save time counsel for plaintiff asked leave to withdraw those checks from the exhibit to which defendant said he would make no objection. Such checks were ordered withdrawn and were placed together and marked exhibit 26-x for identification. Counsel for defendant proceeded to cross-examine plaintiff as to such checks after such with-

drawal, to which plaintiff objected, the objection being sustained by the court. We see no error in so doing under the circumstances, nor (g) in denying defendant's motion for a nonsuit.

█ (h) Defendant requested certain instructions, one of which instructed the jury to bring in a verdict for defendant and another was to the effect that the evidence did not warrant their finding plaintiff entitled to any compensation for assisting in financing defendant. In view of what we have already said regarding the evidence, we see no error in refusing such instructions. Another instructed the jury that even though they found from the evidence that defendant agreed to pay plaintiff the sum of $4,000 as a bonus for assisting in financing the business, if they should also find that defendant did not render any service other than the exchange of checks or the loan of money, the only compensation to which plaintiff would be entitled was interest. In view of the fact that the evidence is such that if a finding of fact had been requested as to the services rendered in such assistance it would have justified a finding that something more than the exchange of checks and the loan of money was done by plaintiff in performing such services, we fail to see where any prejudice resulted from the failure to give such instruction. █ Defendant also requested the court to instruct the jury to find upon certain questions of fact presented. Under section 625 of the Code of Civil Procedure it is discretionary with the court to "submit or refuse to submit particular questions of fact to the jury". The exercise of the power and the extent of its exercise are left to the discretion of the court, and error cannot be maintained without at least a clear showing of the abuse of such discretion. (*Olmstead* v. *Dauphiny*, 104 Cal. 635, 641 [38 Pac. 505].) In the instant case we fail to see where there was any such abuse.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 22, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 20, 1931.